DILLON, Judge, dissenting.
Because I believe that there was a substantial basis for the magistrate to conclude that probable cause existed to search Defendant's residence, I respectfully dissent.
In State v. McKinney, 368 N.C. 161, 775 S.E.2d 821 (2015), our Supreme Court restated some basic principles regarding our role in reviewing the sufficiency of an officer's supporting affidavit to justify the issuance of a search warrant.
The affidavit must detail "the facts and circumstances establishing probable cause to believe that items are in the places ... to be searched." McKinney, 368 N.C. at 164, 775 S.E.2d at 824 (citing N.C. Gen.Stat. § 15A-244(3) (2013) ).
"A magistrate must make a practical, common-sense decision, based on the totality of the circumstances, whether there is a 'fair probability' that contraband will be found in the place to be searched." Id. (internal marks omitted).
"This standard for determining probable cause is flexible" and permits "the magistrate to draw 'reasonable inferences' from the evidence in the affidavit [.]" Id.
"Probable cause requires not certainty, but only a probability or substantial chance of criminal activity." Id. at 165, 775 S.E.2d at 825 (emphasis in original) (internal marks omitted).
"The magistrate's determination of probable cause is given 'great deference' and after-the-fact scrutiny should not take the form of a de novo review. Instead, a *319 reviewing court is responsible for ensuring that the issuing magistrate had a substantial basis for concluding that probable cause existed." Id. (internal marks omitted).
Based on these principles, I agree with the State that the trial court erred in granting Defendant's motion to suppress.
*697 Defendant lives in a residence in Wilmington with her boyfriend (Mr. Black) and his half-brother (Mr. Whitehead). Defendant was arrested for drug-related offenses after officers obtained a warrant to search the Wilmington residence. The officers obtained the search warrant after discovering drugs and evidence of drug dealing in a car driven by Mr. Black and in which Mr. Whitehead was the sole passenger.
The issue in the case is whether the facts in the officer's affidavit were sufficient to support the magistrate's determination that there was a fair probability that officers would find illegal drugs in the Wilmington residence. Our Supreme Court held that an affidavit for a warrant to search a defendant's residence was "fatally defective" where it merely stated that the defendant was a known drug dealer and attempted to sell narcotics to an undercover officer and otherwise contained no facts or circumstances which "implicate[d] the premises to be searched." State v. Campbell, 282 N.C. 125, 131, 191 S.E.2d 752, 756-57 (1972).
In a decision this past summer, our Supreme Court reached a contrary result, sustaining a warrant to search the defendant's apartment where the supporting affidavit stated that a visitor to the apartment was pulled over immediately after his visit to the apartment and drugs and other evidence of drug dealing were found in the visitor's car. See McKinney, 368 N.C. at 162, 775 S.E.2d at 823. The Court stated that the affidavit differed from the affidavit at issue in Campbell because it contained facts which created a "nexus between [the visitor's] vehicle and [the] defendant's apartment[.]" Id. at 166, 775 S.E.2d at 825. Specifically, the affidavit stated that the visitor's cell phone contained a text exchange which occurred shortly before the visitor arrived at the defendant's apartment and which suggested the "preparation for and negotiation of a drug transaction[.]" Id. The Court held that the case was distinguishable from its 1972 Campbell decision because the affidavit in Campbell "included no information indicating that drugs had been possessed in or sold from the dwelling to be searched." Id. at 166, 775 S.E.2d at 826.
I respectfully disagree with the majority that the affidavit in the present case "is materially indistinguishable from Campbell. " It is true that the affidavit, here, did not contain the same type of information in the supporting affidavit in McKinney, that is, information showing that the vehicle where the drugs were found had just left the premises to be searched. However, unlike in Campbell, the officer's affidavit here did contain other information which implicated the Wilmington residence, namely, that the occupants of the vehicle where illegal drugs were found repeatedly lied about where they lived. For instance, the officer testified that prior to the drugs being found in their vehicle, the brothers *698 lied to the officers about their place of residence, stating that they lived on Twin Oaks Drive in Castle Hayne, (located some miles north of their actual residence in Wilmington). Also, after officers found 8.1 grams of marijuana, a large amount of cash, cell phone text messages indicative of a drug transaction, and other evidence of drug dealing, the brothers repeated the lie, stating that they kept the drugs in their car so that their mother, who also lived at the Castle Hayne residence, would not know about their involvement in illegal drugs. Later, the mother informed an investigating officer that her sons did not live in Castle Hayne but that her sons had lived at the Wilmington residence for three years and only used the Castle Hayne residence to receive mail.
In conclusion, the affidavit in the present case did not contain information that anyone had seen illegal drugs at the Wilmington residence or that anyone found with illegal drugs had just left the Wilmington residence. I believe, though, that the information did, otherwise, implicate the Wilmington residence; namely, the repeated lies the brothers told the officers about where they lived. Though this information did not establish *320 with certainty that drugs would be found at the Wilmington residence, it contained facts and circumstances from which a magistrate, exercising common sense, could conclude that there was a "probability or substantial chance" that drugs or evidence of other criminal activity would be discovered at the Wilmington residence. Accordingly, my vote would be to reverse the trial court's order suppressing the evidence discovered during the search of the Wilmington residence. See, e.g., People v. Nunez, 242 Mich.App. 610, 614, 619 N.W.2d 550, 552 (2000) (Michigan court holding that the "[d]efendant's denial that he lived at [a certain] apartment, combined with the reasonable inference that drug traffickers often keep evidence of illicit activity in their homes, provided a substantial basis for the magistrate's finding of probable cause to search the apartment").